J. S44002/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                           :          PENNSYLVANIA
           v.         :
                           :
BRADLEY SHIPMAN,         :        No. 1973 EDA 2015
                           :
          Appellant    :

Appeal from the Judgment of Sentence, June 10, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0004583-2014

BEFORE: FORD ELLIOTT, P.J.E., STABILE AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JULY 11, 2016**

Bradley Shipman appeals from the June 10, 2015 judgment of sentence entered by the Court of Common Pleas of Philadelphia County following his conviction in a waiver trial of burglary, conspiracy to commit burglary, criminal trespass, theft by unlawful taking, receiving stolen property, possessing instruments of crime, and criminal mischief.[1] We affirm.

The trial court set forth the following factual and procedural history:

> . . . . On April 1, 2014, Philadelphia police officers received a radio call with flash information of persons removing pipes from a property located at the 2200 block of Cantrell Street and loading them into a white van. Upon arrival, officers observed three (3)

---

[1] 18 Pa.C.S.A. § 3502(a)(4), 18 Pa.C.S.A. § 903(c), 18 Pa.C.S.A. § 3503(a)(1)(i), 18 Pa.C.S.A. § 3921(a), 18 Pa.C.S.A. § 3925(a), 18 Pa.C.S.A. § 907(a), and 18 Pa.C.S.A. § 3304(a)(2), respectively.

radiators in plain view in a white van along with tools. Officers found [appellant] and John Stroup standing inside the front door of the neighboring building. Officers also observed damage to the doorframe of the property and inside of the property. [Appellant and Stroup] were later arrested and charged with Burglary -Not Adapted for Overnight Accommodation No Person Present[]; Conspiracy; Criminal Trespass -Enter Structure; Theft by Unlawful Taking -Moveable Property; Receiving Stolen Property; Possessing Instruments of Crime; and Criminal Mischief.

On December 11, 2014, [appellant] waived his right to a jury trial. On that same day, a non-jury trial was held at which [appellant] was found guilty of the aforementioned charges. A pre-sentence investigation was also ordered. On February 20, 2015, [appellant] filed a Motion for Extraordinary Relief. On June 10, 2015, a motions hearing was held and the Motion for Extraordinary Relief was denied. On that same day, this court sentenced [appellant] to three (3) years['] reporting probation as to the burglary charge and no further penalty on the other charges. The court also ordered [appellant] to enroll [in] and attend drug and alcohol treatment counseling and maintain gainful employment. Further, restitution was ordered in the sum of one-thousand three hundred dollars ($1,300) with mandatory court costs imposed. On July 1, 2015, [appellant] filed a Notice of Appeal to the Superior Court. On the same day, [appellant] filed a Concise Statement of Errors.

Trial court opinion, 11/18/15 at 1-2 (footnotes omitted).

Appellant raises the following issues for our review:

A. Whether there was sufficient evidence presented by the Commonwealth to find Appellant guilty of the crimes of burglary, criminal trespass, theft, receiving stolen property, possession of instrument of crime and conspiracy[?]

B.    Whether the verdict of guilty entered by the Honorable Sierra [Thomas Street] was against the weight of the evidence[?]

C.    Whether Judge [Thomas Street] was correct in denying Appellant's Motions in Arrest of Judgment and for Extraordinary Relief Pursuant to Pa.R.Crim.P. 704(B)[?]

Appellant's brief at 4.

Having determined, after careful review, that the learned Judge Thomas Street, in her November 18, 2015 Rule 1925(a) opinion, ably and comprehensively disposes of appellant's issues on appeal, with appropriate reference to the record and without legal error, we affirm on the basis of that opinion. The court addresses one sufficiency claim at pages 11-17. The court finds appellant's second and third issues waived as presented in a boilerplate fashion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016

- 3 -

S 4 4 0 0 2 PHILA. MAY 0 9 2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0004583-2014 |
| | : | FILED |
| | : | |
| v. | : | NOV 18 2015 |
| | : | |
| | : | SUPERIOR COURT   Post Trial Unit |
| BRADLEY SHIPMAN | : | NO. 1973 EDA 2014 |
| | | 2015 |

OPINION

THOMAS STREET, J.                                                                November 18, 2015

I.      OVERVIEW AND PROCEDURAL HISTORY

This is an appeal by the Defendant, Bradley Shipman, of this court's Judgment of Sentence entered on June 10, 2015. On April 1, 2014, Philadelphia police officers received a radio call with flash information of persons removing pipes from a property located at the 2200 block of Cantrell Street and loading them into a white van. Upon arrival, officers observed three (3) radiators in plain view in a white van along with tools. Officers found Defendants Bradley Shipman and John Stroup standing inside the front door of the neighboring building. Officers also observed damage to the doorframe of the property and inside of the property. The Defendants were later arrested and charged with Burglary -Not Adapted for Overnight Accommodation No Person Present);[1] Conspiracy;[2] Criminal Trespass -Enter Structure;[3] Theft by Unlawful Taking -Moveable Property;[4] Receiving Stolen Property;[5] Possessing Instruments of Crime;[6] and Criminal Mischief.[7]

---

[1] 18 Pa. C.S. § 3502 §§ A4
[2] 18 Pa. C.S. § 903 § C
[3] 18 Pa. C.S. § 3503 §§ A 11
[4] 18 Pa. C.S. § 3921 §§ A

1

On December 11, 2014, the Defendant waived his right to a jury trial. On that same day, a non-jury trial was held at which the Defendant was found guilty of the aforementioned charges. A pre-sentence investigation was also ordered. On February 20, 2015, the Defendant filed a Motion for Extraordinary Relief. On June 10, 2015, a motions hearing was held and the Motion for Extraordinary Relief was denied. On that same day, this court sentenced the Defendant to three (3) years reporting probation as to the burglary charge and no further penalty on the other charges. The court also ordered the Defendant to enroll and attend drug and alcohol treatment counseling and maintain gainful employment. Further, restitution was ordered in the sum of one-thousand three hundred dollars ($1,300) with mandatory court costs imposed. On July 1, 2015, the Defendant filed a Notice of Appeal to the Superior Court. On the same day, the Defendant filed a Concise Statement of Errors.

II.     FACTUAL HISTORY

Sergeant John Hart testified that on April 1, 2014, at about 3:50 p.m., he was fully uniformed on routine patrol with his partner, Officer Joseph Kalisak, when he received a flash radio call about a burglary at the 2200 block of Cantrell Street in Philadelphia, Pennsylvania. (N.T. 12/11/14 pp. 11, 12).[8] The flash call indicated that there were people moving pipes from the above property and loading them into a white van. (N.T. 12/11/14 p. 27). Upon arrival, both Sergeant Hart and Officer Kalisak observed a U-Haul van parked on an angle with its rear door open in front of 2247 Cantrell Street. (N.T. 12/11/14 pp. 12, 13, 29). As they approached the van, they noticed three (3) large cast iron radiators in plain view inside of the van, along with a small bag of tools. (N.T. 12/11/14 pp. 13, 29). Next door at 2245 Cantrell Street, Sergeant Hart

---

[5] 18 Pa. C.S. § 3925 §§ A
[6] 18 Pa. C.S. § 907 §§ A
[7] 18 Pa. C.S. § 3304 §§ A 2
[8] All references to the record refer to the notes of testimony for the waiver trial recorded on December 11, 2014.

observed an open front door with Defendants Bradley Shipman and John Stroup standing inside. (N.T. 12/11/14 p. 14). As Sergeant Hart proceeded up the steps, Defendant Stroup met him at the front steps with a blue reciprocating saw in his hands. (N.T. 12/11/14 pp. 14, 15). Sergeant Hart further testified that he observed damage to the doorframe of the main outside door and a door located within the vestibule of the home as he entered the property. (N.T. 12/11/14 pp. 17, 22, 23). Although the main outside door's lock looked intact, it was not secure because the door frame near the deadbolt was damaged. (N.T. 12/11/14 pp. 16, 19, 24, 25).

Moreover, Sergeant Hart testified that he observed additional damage to the property. The copper piping inside of the home had been removed and could not be found on the premises or in the Defendants' van. (N.T. 12/11/14 pp. 14, 18). Sergeant Hart also testified that the property appeared to be abandoned. (N.T. 12/11/14 p. 18). The house had no furniture and the basement through the second floor contained mostly rubbish. *Id.* After making initial observations, Sergeant Hart asked Defendant Stroup about his reason for being on the property. (N.T. 12/11/14 p. 15). Defendant Stroup responded that the landlord had given him permission to be present on the property. (N.T. 12/11/14 pp. 16, 27). Further, Officer Kalisak testified that Defendant Stroup gave him the name of a person whom he indicated was the landlord, but at the time of testimony Officer Kalisak could not recall the name provided to him. (N.T. 12/11/14 p. 28). However, Defendant Stroup also gave Officer Kalisak a phone number in which to call and verify whether the landlord had indeed given Defendant Stroup permission to be on the property. *Id.* Officer Kalisak only verified that the individual on the other line was a male. *Id.*

Ms. Latasha Danine Perry testified that she was the owner of the property at 2245 Cantrell Street for the last seventeen (17) years. (N.T. 12/11/14 pp. 32, 33). Ms. Perry also testified that she did not know Defendant Stroup or Defendant Shipman nor had she given either

3

of them permission to enter her home on April 1, 2014. (N.T. 12/11/14 p. 33). Ms. Perry stated that no one was currently residing in the property but that the home had been occupied intermittently by her mother six (6) to eight (8) months earlier. (N.T. 12/11/14 pp. 34, 47). Further, Ms. Perry indicated that her home had been on the market prior to April 1, 2014, but that the listing had expired. (N.T. 12/11/14 p. 35). A lockbox remained on the door because of the previous listing although it contained no key since 2011. (N.T. 12/11/14 pp. 35, 36).

Ms. Perry further testified that her last visit to the property prior to April 1, 2014 was at the end of February or beginning of March 2014. (N.T. 12/11/14 p. 36). During that visit, she found a broken front window. (N.T. 12/11/14 p. 37). This was the second time Ms. Perry had to replace the front window because it was also broken one week prior to this time. (N.T. 12/11/14 pp. 37, 38). Upon her arrival to the property, Ms. Perry observed that there were holes in the walls, extending from the dining room to the basement where something had been torn out. (N.T. 12/11/14 p. 39). She further observed floor boards in her living room that were pulled apart. *Id.* However, it was not until later that Ms. Perry discovered that copper piping and radiators had been removed from the home. (N.T. 12/11/14 p. 40). Ms. Perry later testified that the only persons that had permission to enter her property at any time were her cousin and realtor, Diana Perry and her contractor, Mr. Styles, who replaced the broken windows. (N.T. 12/11/14 pp. 35, 42, 43). Ms. Perry identified the radiators in photos as belonging to her and testified that no one had permission to remove the radiators from the property. (N.T. 12/11/14 p. 41).

On direct examination, Ms. Lenora Trombley, Defendant Shipman's girlfriend, testified that she has known Defendant Shipman for ten (10) years and that they have been living together for six (6) years. (N.T. 12/11/14 p. 50). Ms. Trombley stated that she knew Defendant Stroup

4

for two (2) years. (N.T. 12/11/14 p. 50). She claimed that Defendant Stroup asked her and Defendant Shipman to assist him and his girlfriend, Cynthia Chaika, to move from 2243 Cantrell Street to their new apartment. (N.T. 12/11/14 pp. 50, 51, 52, 54, 79). Defendant Shipman then asked Ms. Trombley to rent the U-haul truck since he nor Defendant Stroup had a valid driver's license. (N.T. 12/11/14 pp. 51, 52). Ms. Trombley further testified that she picked up the U-haul truck at 8:00 a.m. and approximately five (5) trips were made between both locations which continued until the early afternoon. (N.T. 12/11/14 pp. 52, 53).

Ms. Trombley also stated that Defendant Stroup and his girlfriend mentioned going next door to pick up something during the last load and that he had keys or something to the house next door because he had permission to be on the premises. (N.T. 12/11/14 p. 57).

On cross-examination, Ms. Trombley testified that she was not with Defendant Stroup or Defendant Shipman when they entered the property at 2245 Cantrell Street. Further, she had no personal knowledge about how the Defendants entered the house and she did not know the owner of 2245 Cantrell Street. (N.T. 12/11/14 p. 61). Moreover, Ms. Trombley testified that approximately an hour passed from the time the Defendants left South Street until the time of their arrest. *Id.*

On direct examination, Defendant Bradley Shipman testified at the time of trial he was unemployed and did work doing computer repairs as a side job. (N.T. 12/11/14 p. 63). He further testified that he has known Defendant Stroup for two (2) years and he was introduced by Defendant Stroup's girlfriend. *Id.* Defendant Shipman testified that Defendant Stroup asked him to assist him and his girlfriend to move one (1) to two (2) days prior to April 1, 2014, and to secure a truck on their behalf. (N.T. 12/11/14 p. 64). On the morning of April 1, 2014, he asked his girlfriend, Lenora Trombley, to secure the vehicle because his license was in the process of

5

being restored after being suspended for eight (8) years and he had not yet taken a current photo. *Id.* Defendant Shipman further testified that the move took approximately half of the day but it was not until he and Defendant Stroup were about to return the U-haul truck that Defendant Stroup stated he had certain items next door and asked Defendant Shipman for his assistance with moving them since they were heavy. (N.T. 12/11/14 pp. 65, 66). Defendant Shipman also testified that Defendant Stroup stated he had access to the property and claimed that he believed Defendant Stroup's claims. (N.T. 12/11/14 p. 66). He also testified that Defendant Stroup tried to clear him of wrongdoing with the arresting officer. (N.T. 12/11/14 p. 67).

Further, on cross-examination, Defendant Shipman testified he did not think it was strange for Defendant Stroup to claim the three (3) radiators in the property at 2245 Cantrell Street belonged to him since Defendant Stroup had previously told him he had access to the house from the maintenance man. (N.T. 12/11/14 p. 68). Moreover, Defendant Shipman testified "I walked up the steps and walked in the front door" and that Defendant Stroup simply "walked up and turned the doorknob and opened the door and I walked in behind him." (N.T. 12/11/14 p. 66). Defendant Shipman also testified that when the police arrived he was not sure why they were there because he believed he and Defendant Stroup had permission to be on the property and they were only there to retrieve the radiators. (N.T. 12/11/14 pp. 66, 67). Defendant Shipman also stated that the radiators were loose sitting inside the parlor room when they arrived. (N.T. 12/11/14 p. 67).

On redirect, Defendant Shipman testified that Defendant Stroup paid for the truck rental and that Defendant Stroup did not pay him at all. (N.T. 12/11/14 p. 70).

Defense counsel also presented two character witnesses on behalf of Defendant Shipman. The first character witness Marleen Young testified that she was a retired federal employee

6

working with the Trenton District Court for the past twenty-eight (28) years. (N.T. 12/11/14 p. 71). Ms. Young further testified that she is friends with Defendant Shipman's mother and she has known him since he was born. (N.T. 12/11/14 p. 72). Ms. Young concluded her testimony by stating that Defendant Shipman has a reputation for being law abiding and truthful. *Id.*

The second character witness, Mr. Marc Esworthy, testified that he is the vice president of finance for a center city property management company. (N.T. 12/11/14 p. 75). Mr. Esworthy further testified he and Defendant Shipman met through mutual friends ten (10) years ago. *Id.* Mr. Esworthy described his relationship with the Defendant as good and stated Defendant Shipman had a reputation for being law abiding and truthful. (N.T. 12/11/14 p. 76). However, on cross examination Mr. Esworthy testified Defendant Shipman never worked for him and his relationship with the Defendant was on a social level. (N.T. 12/11/14 pp. 76, 77). Further, his position at the finance center had no bearing on his relationship with the Defendant. *Id.*

Defense counsel then presented the testimony of Cynthia Chaika, Defendant Stroup's girlfriend for the limited purpose of describing the condition of the property prior to the arrest. (N.T. 12/11/14 p. 78). Ms. Chaika testified that she resided with Defendant Stroup at 2243 Cantrell Street from December 2013 to April 2014. (N.T. 12/11/14 p. 80). Ms. Chaika stated Defendant Stroup helped board up the front window of the property after it was broken because they were concerned about living next to a house that had been vandalized. (N.T. 12/11/14 pp. 80, 83). Moreover, when Defendant Stroup was in the process of boarding up the window, after having called the number that was displayed on a sign on the window, a man came by to board up the property and later gave Defendant Stroup permission to enter the property. (N.T.

12/11/14 pp. 82, 83). Ms. Chaika also testified Defendant Stroup knew the code to the lockbox on the property and that the lockbox contained a key. (N.T. 12/11/14 p. 80).

However, on redirect, Ms. Chaika conceded she was unsure whether Defendant Stroup had a code to the lockbox to get the key or if he possessed the actual key. (N.T. 12/11/14 p. 84). Moreover, on cross-examination Ms. Chaika testified that she had no personal knowledge of Defendant Stroup boarding up the windows at 2245 Cantrell Street because she was inside of their home at the time he would have done so. (N.T. 12/11/14 pp. 81, 82). Ms. Chaika further testified she does not know Latasha Perry, the owner of the home, or Mark Styles, the contractor who fixed the windows. (N.T. 12/11/14 p. 82). In Ms. Chaika's final words, she testified that she had a basic understanding of the charges against Defendant Stroup and that she also understood the potential consequences involved. (N.T. 12/11/14 p. 83).

Defendant John Stroup testified that he is a carpenter. (N.T. 12/11/14 pp. 84, 85). Defendant Stroup stated that around November 10, 2012, the first week he resided at 2245 Cantrell Street, he came home from work and noticed that the property at 2243 Cantrell Street had broken glass strewn everywhere. (N.T. 12/11/14 p. 86). Defendant Stroup testified that he attempted to call 311 and the number for a realtor in the window of the property, but neither attempt proved to be successful. *Id*.

As his testimony continued, Defendant Stroup stated on Saturday of the same week he had a day off and went to Home Depot to purchase a piece of plywood to board up the window from the outside. *Id.* But as he was in the process of boarding up the window, a man drove up and asked him what he was doing. *Id.* Defendant Stroup testified that he told the man he was boarding up the window, and the man replied that he was there to do just that. *Id.* Defendant Stroup further testified that the man asked him if he minded "keeping an eye on this place" and

8

gave Defendant Stroup his phone number and a combination to the lockbox which Defendant Stroup stated was NCD. *Id.* Defendant Stroup testified that after he received permission to enter the property, he entered half a dozen times on occasions when he would hear noises coming from the property. (N.T. 12/11/14 pp. 87, 92).

However, when he would investigate it turned out that no one was there. *Id.* He also testified that he did not remember the name of the contractor due to the length of time that had passed and although he had a phone number at one time he never used it since he never came into contact with the man again. *Id.* Moreover, Defendant Stroup testified he did maintain the property by shoveling the snow and the sidewalks since the man had told him "he'll throw me a couple of bucks." *Id.* Defendant Stroup concluded his testimony by stating that it never snowed the first winter, but during the second winter he shoveled some snow and when he attempted to call the man regarding payment prior to his move out from 2243 Cantrell Street the man's number was disconnected. (N.T. 12/11/14 p. 88).

On cross-examination, Defendant Stroup testified that although he is a carpenter he is not familiar with the installation and/or removal of radiators and he did not cut out the radiators from 2245 Cantrell Street. (N.T. 12/11/14 p. 90). He also testified, however, that he was upset and removed the radiators out of the property after he was unable to reach the contractor regarding payment for snow that he shoveled throughout the winter. (N.T. 12/11/14 pp. 88, 90). Defendant Stroup stated that he thought he would be able to resell the radiators for fifty dollars ($50.00). (N.T. 12/11/14 p. 90). He also stated that there was a lockbox, he had a key, and he thought the property was abandoned. (N.T. 12/11/14 pp. 90, 91). Defendant Stroup also testified that he entered the house multiple times, never noticed damage to the doorframe, and that the radiators were located in the entryway from "day one." (N.T. 12/11/14 p. 92).

9

On rebuttal Ms. Perry testified that when she went to her property in late February or early March of 2014 there were no radiators located in the front entry way because they were all still in their proper places. (N.T. 12/11/14 p. 93).

III.  ISSUES

In the Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal, the Defendant identifies the following issues:

1.  The evidence presented by the Commonwealth was insufficient as a matter of law to convict the Appellant of the charges of burglary (not adapted for overnight accommodation) 18 Pa.C.S. § 3502 (A) (4); conspiracy – burglary 18 Pa.C.S. § 903 (C) ; criminal trespass (enter structure) 18 Pa.C.S. § 3503 (A) (1) (i); Unlawful taking (movable property) 18 Pa.C.S. § 3921(A); receiving stolen property 18 Pa.C.S. § 3925(A); possession of instrument of crime 18 Pa.C.S. § 907 (A); and criminal mischief 18 Pa.C.S. § 3304 (A) (2).

2.  The conviction of Appellant on the facts presented by the Commonwealth was against the weight of the evidence and should have resulted in an acquittal on all charges.

3.  The trial judge erred in denying Appellant's Motion in Arrest of Judgment and for Extraordinary Relief Pursuant to Pa.R.Crim. P704 (B).

IV.  STANDARD OF REVIEW

The appellate courts' standard of review of sufficiency claims requires that the record be evaluated "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Shank*, 883 A.2d 658 (Pa. Super. Ct. 2005) (*citing Commonwealth v. Widmer*, 744 A.2d 745, 751 (2000)). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id*. "Where the record supports the factual findings of the trial court [an appellate court

10

is] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003).

The Commonwealth need not establish guilt to a mathematical certainty. *Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa. Super. 1997). Rather, the Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super Ct. 2000). "The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *See Commonwealth v. Murphy*, 795 A.2d 1025, 1038-39 (Pa. Super. 2002).

Additionally, it is within the sound discretion of the trial court whether to grant a new trial based on a challenge to the weight of the evidence. *Commonwealth v. Eddowes*, 397 Pa.Super. 551, 580 A.2d 769 (1990). Absent an abuse of discretion, the judgment of the trial court should not be reversed. *Id* "It is well established that the trial court should award a new trial on the basis requested by appellant only where a verdict is so contrary to the evidence so as to shock one's sense of justice and make the award of a new trial imperative." *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111 (1991). An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. *Commonwealth v. Ables,* 404 Pa.Super. 169, 590 A.2d 334 (1991).

V.     **DISCUSSION**

The Defendant argues that the Commonwealth presented insufficient evidence to convict the Defendant of Burglary –Not Adapted for Overnight Accommodation; Conspiracy to Commit

11

Burglary; Criminal Trespass; Unlawful Taking - Moveable Property); Receiving Stolen Property; Possession of Instrument of a Crime; and Criminal Mischief. This court disagrees.

"A person commits the offense of burglary if, with the intent to commit a crime therein, the person: enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S. § 3502(a) (4). Further, "[a] person commits an offense [of criminal trespass] if, knowing that he is not licensed or privileged to do so, he: enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" 18 Pa.C.S. § 3503 (A)(1)(i).

In order to prevail at trial on the charge of burglary, the Commonwealth must prove beyond a reasonable doubt the following three elements: (1) entry of a building or occupied structure by the defendant; (2) with the contemporaneous intent on the part of the defendant of committing a crime therein; (3) at a time when the premises are not opened to the public and the defendant was not then licensed or privileged to enter. *Commonwealth v. Tingle*, 275 Pa. Super. 489, 419 A. 2d 6 (1980); *Commonwealth v. Brosko,* 243 Pa. Super 312, 315, 365 A. 2d 867, 868 (1976). Where a Defendant has not been given permission to enter the premises by the only person authorized to do so, there is sufficient evidence to find for the charge of burglary. *Commonwealth v. Gonzalez*, 297 Pa. Super. 66, 443 A.2d 301 (1982). Further, when persons are found within a building where entry has been unauthorized and objects belonging to that building are in the process of being removed, then there is direct evidence of unlawful entry into the building and the contemporaneous intent to remove the objects from the building has been established. *Commonwealth v. Gordon*, 329 Pa. Super. 42, 53 (Pa. Super. Ct. 1984).

12

The intention behind the burglary statute is to safeguard the sanctity of the building and the persons and contents that may be contained within. *Commonwealth v. Cleland*, 587 Pa. 710, 898 A.2d 1068 (2006). Moreover, the intention behind the criminal trespass statute is to prevent the unlawful intrusion onto real property. *Id.* Although, the language in both statutes are similar criminal trespass is not a lesser included offense of burglary. *Id.* The distinction arises with the intent of the actor. *Id.* The actors' subjective belief that he is privileged or has a license to enter the premises is irrelevant for burglary; however, since the defendant's subjective belief is an element of criminal trespass, the defendant's actual belief that he was privileged or licensed to enter can serve to acquit him from this charge. *Id.*

Here, the record is clear. On April 1, 2014, the Defendants entered the property at 2245 Cantrell Street without Ms. Perry's express or tacit knowledge neither was credible evidence presented that permission to enter was never granted to either Defendant. (N.T. 12/11/14 pp. 35, 42, 43). Defendant Stroup admitted to taking the radiators without permission. (N.T. 12/11/14 p. 90). Further, Defendant Shipman evidenced intent to commit the crimes of burglary and criminal trespass by his unauthorized entry and presence in the property coupled with his action of providing assistance to Defendant Stroup to remove the radiators from the property into the U-haul van for monetary gain. (N.T. 12/11/14 p. 29, 33). The Defendant's actions were witnessed by Sergeant Hart and Officer Kaliask when they arrived on the scene and observed Defendant Stroup with a saw and three cast iron radiators sitting in the van in plain view. *Id.* Based on the aforementioned facts, the requirements for burglary and criminal trespass have been met.

Moreover, for the charge of criminal conspiracy it is well-recognized that either tacit or express agreement may be proven inferentially, but not by mere suspicion or conjecture. *Commonwealth v. Lore*, 388 Pa. Super 42 (Pa. Super. Ct. 1984) (*citing Commonwealth v. Azim*,

13

313 Pa. Super. 310, 459 A.2d 1244 (1983)), *Commonwealth v. Volk*, 298 Pa.Super. 294, 444, A.2d, 1182 (1982). However, if the Defendant is not only present at the scene of the crime but also identified as one of the agents of the crime, the fact finder may conclude that the criminal agreement was present. *Commonwealth v. Johnson*, 265 Pa.Super. 418, 421, 402 A.2d 507, 509 (1979). Further, where a security guard finds two defendants together in the music room in a school after 6:00 p.m. on a holiday, the evidence was found to be more than sufficient to support a conclusion beyond a reasonable doubt that the two Defendants had entered into a common agreement. *Commonwealth v. Gordon*, 329 Pa.Super. 42 (Pa.Super. Ct. 1984).

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: ...conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903 (C).

Defendant Shipman and Defendant Stroup were found together inside of 2245 Cantrell Street, a property that did not belong to them, after they had removed three (3) radiators that had been affixed to the property; therefore, it is reasonable to find that they entered into a common agreement. (N.T. 12/11/14 pp. 29, 42, 43, 65, 66). Defendant Shipman's assistance was essential to the commission of the crime because Defendant Stroup would have been unable to load the radiators on to the U-haul van without his help due to their excessive weight. (N.T. 12/11/14 pp. 65, 66). Defendant Shipman admitted that he asked his girlfriend to rent the vehicle being used to take radiators to sell without anyone's permission. (N.T. 12/11/14 pp. 64, 13, 15). Defendant Shipman claimed that Defendant Stroup tried to clear him of any wrongdoing on the scene to responding officers. However, Defendant Stroup nor the officers ever corroborated this particular claim regarding Defendant Shipman's culpability during testimony.

14

Other noted discrepancies include the following: Defendant Stroup claimed that he never saw damage to the entryway and that he was not familiar with removal of radiators even though he was familiar with tools and a carpenter by trade. (N.T. 12/11/14 pp. 89-90, 92). Sergeant Hart, however, observed damage to two (2) door frames and a reciprocating saw in Defendant Stroup's hands and that both Defendants were inside of the property. (N.T. 12/11/14 pp. 15-16). Additionally, Officer Kalisak testified that he and Sergeant Hart responded to a radio call for people removing pipes from the property and placing them in a white van. (N.T. 12/11/14 p. 27). Upon arrival, Sergeant Hart observed that piping had been cut out from the property but was not found on the scene. (N.T. 12/11/14 pp. 14, 18). Both officers did observe three (3) radiators in the white van with a small bag of tools at that time which was corroborated by Commonwealth exhibits. (N.T. 12/11/14 pp. 13, 17, 29). It is most important to note that this court also found the balance of the testimony given by defense witnesses to be incredible and uncorroborated. The demeanor of the defense witnesses while testifying was inappropriate, including continuous laughter by Ms. Trombley and hesitation by Defendant Shipman during direct and cross examinations, which led this court to discredit much of the testimony. Therefore, this court found that the Defendant had culpable knowledge, an agreement existed between the parties, overt acts occurred, and the requirements for conspiracy have been met.

Moreover, when a person exercises unlawful control over moveable property, he may be convicted of theft by unlawfully disposing of the property, although evidence may be lacking that he was the original party who misappropriated the property. *Commonwealth v. Adams*, 479 Pa. 508 (Pa. 1978). Furthermore, where a defendant exerted unlawful control over a home theatre system which did not belong to him with the intent not to return it, the evidence was found sufficient to convict for the charge of unlawful taking. *Commonwealth v. Benson*, 87 A.3d

378 (Pa.Super. Ct. 2013). In contrast, when it has not been established beyond a reasonable doubt whose property a defendant took with the aid of another, why they took the property or whether permission was granted from the owner, the defendant's charges were dismissed. *Commonwealth v. Deeters*, 255 Pa.Super 243 (Pa.Super. Ct. 1978).

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921 (A). "A person is guilty of theft [receiving stolen property] if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925.

In the present case, Defendant Stroup admits that he entered the property to take radiators for monetary gain and without permission. (N.T. 12/11/14 pp. 90, 13-19). Therefore, since the entry to the property was unlawful any activity that occurred thereafter was also unlawful. (N.T. 12/11/14 pp. 16, 17). Sergeant Hart testified there was damage to the main outside door frame of the home and the door frame to the vestibule, which compromised the security of the outside door lock. *Id.* Sergeant Hart also testified that Defendant Stroup had a saw in his hands at the door way of 2245 Cantrell Street. (N.T. 12/11/14 p. 15). However, Defendant Stroup claims that the radiators were laying stacked from day one. (N.T. 12/11/14 pp. 92, 9-11). Defendant Shipman exercised unlawful control of the radiators and caused pecuniary damage to the owner when he assisted Defendant Stroup in removing the radiators from the property at 2245 Cantrell Street and transferred them to the U-haul van without any intention to return them. (N.T. 12/11/14 pp. 65, 66, 67, 68, 69). Accordingly, the Commonwealth has met

16

its burden by establishing sufficient evidence to convict of the crimes of theft by unlawful taking, receiving stolen property, possession of the instrument of a crime and criminal mischief.

Second, the Defendant argues that his conviction was against the weight of the evidence. This argument has no basis. In determining whether a verdict is against the great weight of evidence, a court must determine "notwithstanding all the facts, [whether] certain facts are so clearly of greater weight, that to ignore them or give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751-52 (Pa.Super. 2000). Furthermore, a verdict of guilty in this case was not so against the evidence as to shock the conscience of the court. *Murray* at 597. Moreover, this court's decision was not "manifestly unreasonable," in that the law was properly applied without partiality, bias, prejudice or ill will. *Widmer* at 753 (*quoting Coker v. S. Flickinger Company Inc.*, 625 A.2d 1181, 1185 (Pa. 1993).

Notwithstanding this certainty, when the language of an appeal is boiler plate and does not specify how the evidence was insufficient or why the verdict was against the great weight of evidence, such language preserves no issues for appellate review. *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (Pa.Super. Ct. 1983) (*citing Commonwealth v. Whiteman*, 336 Pa.Super. 120, 485 A.2d 459 (1984)).

Here, the Defendant claims "the facts presented by the Commonwealth was against the great weight of evidence" without stating any basis. Therefore this claim is deficient. *Holmes at 256*. When all of the above evidence is viewed favorably to the Commonwealth, it adequately supports the jury's finding that Appellant was not licensed or privileged to enter the premises, and that he entered "with intent to commit a crime therein." 18 Pa.C.S. § 3502(a). Most importantly, this court found much of the evidence presented by the Defense to be incredible.

17

Therefore, the Defendant's conviction was not against the great weight of evidence for all the aforementioned reasons and should remain undisturbed.

Third, the Defendant argues that the judge erred in denying his Motion to Arrest Judgment and Motion for Extraordinary Relief. This court disagrees.

A motion for arrest of judgment and extraordinary relief may only be granted "[u]nder extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." Pa. R. Crim. 704 (B). "This rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential [...] for example, when there has been a change in law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Pa. R. Crim. 704 (B).

Here, the Defendant asserts no grounds for relief in his motion. Such boiler plate post-verdict motions preserve no issues for review. *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1982) (*citing Commonwealth v. Philpot*, 491 Pa. 598, 421 A.2d 1046 (1981); *Commonwealth v. Gamble*, 485 Pa. 418, 402 A.2d 1032 (1979); *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978)). As such, this court was proper in denying the Defendant's motion where there was no new evidence or compelling circumstance to justify relief.

18

VI.     CONCLUSION

For all of these reasons, this court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: _November 18th 2015_